MARIA RIVERA, by Her Father, Nicomedes Rivera, Plff.,

*v.*

AMADOR PONS, Dft.

---

Law, No. 229.

OPINION OVERRULING PLEA IN ABATEMENT.

1. A Spanish-born minor residing in Porto Rico when the treaty of peace between Spain and the United States was ratified, and who continues to reside therein thereafter until arriving of age and for three years thereafter, but who has no guardian or parents in Porto Rico, does not come within the provisions of article 9 of the treaty, nor § 7 of the organic act.

2. Such a person retains his Spanish citizenship without the necessity of declaring such to be his intention, as required by the treaty.

Filed May 22, 1908.

---

*Mr. José A. Poventud,* attorney for plaintiff.

*Mr. C. M. Boerman,* attorney for defendant.

RODEY, Judge, delivered the following opinion:

The issue before us is one raised by a plea to the jurisdiction for lack of diverse citizenship. The plaintiff is admitted to be

Rivera v. Pons.

a Porto Rican. The defendant is alleged in the complaint to be a Spaniard, which his plea denies, and asserts that he is also a Porto Rican. A hearing was had, and the facts developed were that the defendant was born in 1883 in the Balearic islands, which have been held by this court to be a part of the Spanish peninsula within the meaning of the treaty of Paris. He came alone to Porto Rico in 1897, when he was fourteen years of age, leaving his parents in said Balearic islands, where they still reside. During the year of option, from April 11, 1899, to April 11, 1900, within which, under the treaty, "Spanish subjects, natives of the Peninsula," residing in Porto Rico, could preserve their Spanish citizenship, this defendant was, of course, a minor, being then between sixteen and seventeen years of age, and did nothing in the way of making, before a court of record or registry office, a declaration of his decision to preserve such allegiance. It seems also that he had no guardian or other person in Porto Rico who did anything in that regard for him. He became of age in 1904, and, although more than three years have since elapsed, he has done nothing with reference to his citizenship, but now claims that he is, and that it is his intention and desire to be considered, a Porto Rican. Whether or not this desire of his is induced by the fact that the suit against him is one for seduction, where the damages claimed are the sum of $10,000, the court cannot say.

As will be seen in the indices to volumes 2 and 3 (now in print) Porto Rico Federal Reports, we have many times had to pass upon various phases of the question of the jurisdiction of this court when claimed to be founded upon diverse citizenship arising under the treaty of Paris. Under article 9 of that treaty, only "Spanish subjects, natives of the Peninsula," could

Rivera v. Pons.

preserve their allegiance to the Crown of Spain during the year of option referred to. "In default of which declaration, they shall be held to have renounced it, and to have adopted the nationality of the territory in which they may reside."

Section 7 of the Foraker law (31 Stat. at L. 77, chap. 191) provides: "That all inhabitants continuing to reside therein who were Spanish subjects on the eleventh day of April, eighteen hundred and ninety-nine, and then resided in Porto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Porto Rico, and, as such, entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the eleventh day of April, nineteen hundred, in accordance with the provisions of the treaty of peace between the United States and Spain, entered into on the eleventh day of April, eighteen hundred and ninety-nine; and they, together with such citizens of the United States as may reside in Porto Rico, shall constitute a body politic under the name of The People of Porto Rico, with governmental powers, as hereinafter conferred, and with power to sue and be sued as such."

It is manifest that this boy was born a Spaniard, and was a native of the Peninsula at the date of the ratification of the treaty, but it is also true that he was living here in Porto Rico at that time, and has ever since continued so to live here. We have heretofore held that not only could Spanish parents, natives of the Peninsula, living in Porto Rico, during the year of option, preserve their own allegiance to Spain, but that they could also preserve that of their minor children; and the question arises as to what the present status of this boy is, considering that he himself did nothing through any guardian or other friend to

preserve his allegiance to the Spanish Crown during that year of option. His parents could not preserve it for him, as they had never been in Porto Rico. Whether, under the treaty, he became a Porto Rican or remained a Spaniard after the year of option, is the question.

It suggests itself that, as the parents of this boy were not in Porto Rico, but remained in the Peninsula, and he had no guardian or other person here to preserve his allegiance to Spain.for him, perhaps, in law, his nationality and legal domicil follow that of his parents, and that he was, at such time, constructively a resident of the Peninsula. When he became of age, in 1904, no law was in existence under which he could become a Porto Rican, and therefore the usual year of option given to minors who have, during their minority, a citizenship thrust upon them other than that arising from their parentage, within which to choose the sovereign upon which they will bestow their allegiance, can have no effect.

On the whole, therefore, we are constrained to hold, and do hold, that this defendant never had such a residence in Porto Rico as brought him within either the terms of the treaty of Paris or § 7 of the organic act (Foraker law) aforesaid. In our opinion, having been born a Spaniard, and nothing having occurred to change that status, he is still a subject of the King of Spain, and his plea will therefore be overruled, and it is so ordered.